1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KENNETH E. TARR, | ) | No C 05-3668 TEH (PR) |
| Plaintiff, | ) ) | ORDER DENYING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT AND |
| | ) | REFERRING CASE TO |
| MARIN COUNTY SHERIFF'S | ) | EARLY SETTLEMENT |
| DEPUTIES NEALON, YORK, | ) | PROGRAM |
| MONGEE, MCCREEL, | ) | |
| | ) | (Docket Nos. 28, 30, 34) |
| Defendants. | | |

Plaintiff filed the instant action for damages under 42 USC § 1983 alleging several instances of the use of excessive force against him while he was detained at the Marin County Jail. In his complaint, Plaintiff alleged that on September 20, 2002, he was shackled to a telephone pole in the jail by Deputy Nealon, who maced him without justification.  Plaintiff further alleged that Deputy Sheriffs York, Monge, and McCreel beat him up in the jail's day room without justification.

On January 24, 2006, this Court found that two of Plaintiff's allegations of the use of excessive force stated cognizable claims under § 1983 against the above named Defendants when liberally construed, and ordered the United States Marshal to serve them.  After the Court denied Defendants' earlier motion to dismiss, Defendants now move for summary judgment on the ground that there

are no material facts in dispute and that they are entitled to judgment as a matter of law.  Plaintiff filed a motion to strike Defendants' summary judgment motion on the grounds that they failed to timely file the motion (docket no. 34), which is now DENIED because Defendants' motion was not untimely due to their request for an extension of time before the expiration of the Court's deadline.  Plaintiff later filed an opposition to the motion (docket no. 35).

## DISCUSSION

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R Civ P 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v Liberty Lobby, Inc, 477 US 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  See id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp v Cattrett, 477 US 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex Corp, 477 US at 323.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth

specific facts showing that there is a genuine issue for trial." Fed R Civ P 56(e). Although Plaintiff filed an opposition to the motion, it was not verified and there was no evidentiary support attached thereto.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); see also Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit). In this case, Plaintiff's verified complaint and the attachments thereto have been considered by this Court as an opposing affidavit with regard to Defendants' motion for summary judgment.

Plaintiff was a pretrial detainee at the time of the incidents at issue in this motion. The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. Graham v Connor, 490 US 386, 395 n10 (1989) (citing Bell v Wolfish, 441 US 520, 535-39 (1979)). If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Bell, 441 US at 539. For example, states must be able to take steps to maintain security and order at pretrial facilities, and restraints that are reasonably related to a facility's interest in maintaining jail security are not, without more, unconstitutional punishment. See id at 540. The Ninth Circuit has stated the factors a court should consider in

3

resolving a due process claim alleging excessive force.  <u>White v. Roper</u>, 901 F.2d 1501, 1507 (9th Cir. 1990).  These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline.  <u>Id.</u>

For convicted prisoners, to whom the Eighth Amendment applies, the Supreme Court has held that whenever prison officials stand accused of using excessive physical force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Hudson v McMillian</u>, 503 US 1, 6-7 (1992).  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id at 7.

It is not necessary that a prisoner have suffered significant injury in order to prevail on an Eighth Amendment claim for the use of excessive force.  Id at 9.  However, the scope of the Eighth Amendment is not without limitation.  The Eighth Amendment necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind.  Id at 9-10.   Although a prisoner may believe that his rights were violated, "not every push or shove . . . violates [his] constitutional rights."  Id at 9 (citation omitted).

Several circuits have held that the <u>Hudson</u> analysis also applies to excessive force claims brought by pretrial detainees under the Fourteenth

Amendment.  See <u>United States v Walsh</u>, 194 F3d 37, 48 (2d Cir 1999); <u>Riley v</u> <u>Dorton</u>, 115 F3d 1159, 1167 (4th Cir 1997).  Although the Ninth Circuit has not addressed the issue, it has routinely used the Eighth Amendment as a benchmark for evaluating claims brought by pretrial detainees.  <u>See</u>, <u>e.g.</u>, <u>Redman v County</u> <u>of San Diego</u>, 942 F2d 1435, 1443 (9th Cir 1991) (en banc) (pretrial detainee alleging due process violation when attacked by other inmates must show deliberate indifference to personal security as would a prisoner bringing such claim under 8th Amendment).

In the verified complaint, Plaintiff swears under penalty of perjury in the statement of claim section that on September 10, 2002, Deputies York, Monge, McCreel beat him up in the day room.  In the attachments to the Court's complaint form, which includes a very detailed statement of claim regarding the incidents, Plaintiff provides specific allegations about both incidents.  Plaintiff alleges that he was out of his cell for the hour he was allowed as an inmate in Administrative Segregation at the Marin County Jail.  Plaintiff alleges that it occurred after he had been out of his cell for 45 to 50 minutes.  Plaintiff alleges

> I heard no announcement that time was up.  I did not hear the
> Deputies entering the room.  The first thing I heard was Deputy
> York saying, 'Get Him!'  I immediately turned toward Deputy York
> and I saw five or six Deputies by the door.  I did not threaten the
> Deputies in any way.
> Before I could do or say anything, the Deputies rushed into the
> room.  The Deputies forced me to the ground.  The Deputies kneed
> me in the back.  The Deputies twisted my arms behind my back.  I
> said, 'Don't hurt me.'  A Deputy punched me in the left eye.

<u>See</u>, Complaint, County of Marin Claim Form Attachment at 4.

Plaintiff further alleges in the statement of claim in the complaint that on October 20, 2002, he was shackled to a telephone pole and maced by Deputy Nealon.  In the attachment to the complaint, Plaintiff alleges that while he was out of his cell for his allotted hour, he had chosen to use the telephone, one of the

choices which Deputy Nealon had offered him. He claims that

> I agreed to this and Deputy Nealon shackled my ankles to the telephone pole. I had never seen any other inmate shackled to the telephone pole. I was holding some papers and a pencil and I was trying to make telephone calls.
> There was a clock on the wall. I looked up at the clock and I still had about five or ten minutes left. Deputy Nealon told me time was up. I still had five minutes. Deputy Nealon said no. I said I still had five minutes. I said I had still not succeeded in reaching my lawyer. Deputy Nealon said 'Get off the Phone.'
>
> The phone had been turned off. I was getting my papers together. I did not threaten Deputy Nealon in any way. I thought Deputy Nealon was going to unshackle me as I had five or ten minutes left on my hour out. Deputy Nealon took something out of his pocket. I did not know what it was. I was still shackled to the telephone pole. With no warning about what he was going to do, Deputy Nealon sprayed mace directly into my eyes.

See, Complaint, Marin County Claim Form Attachment at 2.

Defendants claim that they are entitled to summary judgment because there is no evidence that Plaintiff was subjected to unreasonable or excessive force during the two incidents at issue in the complaint, in that the Defendant Deputies used reasonable force in support of a legitimate governmental purpose. Defendants' motion and sworn declarations in support thereof include a very different version of each of these incidents, where Plaintiff was refusing to cooperate with what was asked of him by jail staff and acting in a threatening manner toward Defendants at the time that force was used. In support of the motion, they submit declarations and documentary evidence showing that Defendants used only appropriate force on Plaintiff after he refused to comply with legitimate orders on each occasion.

Specifically, with regard to the incident on September 20, 2002, Plaintiff complains that he was punched in the face and Defendants allege that the force used against him involved a "controlled take-down" to the ground, after which he was walked back to his cell. However, this directly contradicts Plaintiff's factual

allegations that he was never told the hour was over, that the Deputies rushed in, forced him to the ground, kneed him, twisted his arms and punched him in the eye.

Under Defendants' version of the facts of the October 20, 2002 incident, Plaintiff threatened Deputy Nealon with a pencil and mace was only used after Plaintiff was asked to drop the pencil and warned about the impending use of mace and Plaintiff refused to comply.  Under Defendants' version of these facts, Plaintiff was not subjected to unreasonable or excessive force.  This is contradicted by Plaintiff's allegations that he was maced while getting his papers together.  In reviewing the vastly different facts set forth by the parties here, it cannot be said that there is no genuine dispute as to a material fact sufficient for a reasonable jury to return a verdict for the nonmoving party.  Celotex Corp, 477 US at 323; Anderson, 477 US at 248.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact remain.  Assuming the truth of Plaintiff's pleadings, evidence produced by Defendants conflicts with Plaintiff's evidence with respect to at least two questions of fact.  First, a genuine issue of material fact exists regarding whether Plaintiff was resistant or combative during these incidents, such that Defendants' application of force was necessary.  Second, assuming some force was warranted, there is a material issue of fact regarding whether Defendants' force was applied in a good faith effort to maintain and restore discipline.  See White, 901 F.2d at 1507.  A reasonable jury, drawing inferences from facts in the light most favorable to Plaintiff, could find that Defendants' use of force amounts to punishment because it was not reasonably related to a rational alternative purpose, or because it was excessive in relation to that purpose.  See Bell, 441 U.S. at 538.  Accordingly, the Court concludes that

7

Plaintiff has set forth "specific facts showing that there is a genuine issue for trial" and, therefore, Defendants are not entitled to summary judgment as a matter of law.  Celotex, 477 US at 324.  As such, Defendants motion for summary judgment must be DENIED (docket no. 30).

## REFERRAL FOR SETTLEMENT CONFERENCE

On June 1, 2007, Plaintiff filed a "motion for court order" in which he requested that the Court set the case down for a settlement conference, based on the failure of Defendants to timely respond to the Court's order (docket no. 28). Defendants had, at that time, already requested that the Court provide an extension to this Court's earlier date set for a further dispositive motion. However, at this time, the Court finds it appropriate to order settlement proceedings in this matter.  Therefore, Plaintiff's motion is partially GRANTED (docket no. 28).

The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner settlement proceedings.  The present case will be REFERRED to Magistrate Judge Vadas for settlement proceedings.  The proceedings will consist of one or more conferences as determined by Magistrate Judge Vadas.  The conferences may be conducted at Atascadero State Hospital, where Plaintiff is housed and Defendants and/or their representative shall attend in person, or may contact Magistrate Judge Vadas to seek permission to attend by videoconferencing, if available, or by telephone.

The conference shall take place within one hundred twenty (120) days after the date of this Order.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a

1 | report regarding the conference.

2 |      The Clerk of the Court shall provide a copy of this Order, and copies of

3 | documents from the court file that are not accessible electronically, to Magistrate

4 | Judge Vadas.

5 | **CONCLUSION**

6 |      For the foregoing reasons, defendants' motion for summary judgment

7 | (docket no. 30) is DENIED and the case is referred to the Pro Se Prisoner

8 | Settlement Program.  The Clerk shall terminate all pending motions as decided by

9 | this order.

10 | SO ORDERED.

11 | DATED:  02/04/08

THELTON E. HENDERSON
United States District Judge

9